Submitted November 24, 2009, affirmed December 29, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THEODORE WAYNE HINER, SR.,
*Defendant-Appellant.*

Polk County Circuit Court
07P3477, 08P3061;
A138610 (Control), A138611

246 P3d 35

Peter Gartlan, Chief Defender, and Travis Eiva, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

**ORTEGA, J.**

In this consolidated appeal, defendant challenges two separate convictions, for possession of cocaine, ORS 475.884, and for violation of his probation for a previous possession of cocaine. For both judgments, he assigns error to the trial court's denial of his motion to suppress evidence that challenged the legality of an underlying stop. For the reasons stated below, we affirm.

We view the evidence in the light most favorable to the state, which prevailed below. *State v. Cunningham*, 337 Or 528, 530, 99 P3d 271 (2004). We are bound by the trial court's express findings of fact if the record supports those findings, and otherwise presume that the trial court found the facts to be consistent with its ultimate conclusion. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Our task is to determine whether the trial court applied legal principles correctly to the facts that it found. *Id.*

Defendant's convictions followed a stop by a sheriff's deputy on suspicion that defendant had violated his probation by drinking and by denying to the deputy that he was on probation. The stop occurred in the context of an investigation of defendant's sister and her husband, who were intoxicated in a casino parking lot and were being questioned about a domestic dispute and possible drunk driving. At the request of the deputy, casino security summoned defendant outside to the parking lot for questioning about the incident between his sister and her husband. Before defendant arrived, the deputy ran a computer check on all three individuals and discovered that defendant did not have a valid driver's license, that he was on probation for possession of cocaine, and had a criminal history that involved violence or weapons. The deputy knew that a prohibition against alcohol consumption is a common probation condition. When defendant arrived, his eyes were "red and watery," his hair was "messy," and the deputy could smell alcohol on his breath, supporting the couple's previous admission that all three of them had been drinking. The deputy believed that defendant had been drinking, although he was not obviously intoxicated.

Defendant at first denied that he had been drinking, but then admitted to taking "a couple of sips of alcohol." Additionally, defendant denied that he had "anything illegal" on his person, placed his hands in his pockets, and refused the deputy's request to search him. The deputy testified that "[defendant's] body posture made me think that he was trying to conceal something" because

"he turned so that his right side was away from me. He did this dramatically so it was almost as though he was what we call bladed, keeping his right side away from me, and it made me think that there was something on his person, specifically on his right side, that he didn't want me to see or know about."

Then the deputy inquired whether defendant was "on probation or parole." Defendant denied that he was and attempted to terminate the conversation and walk away. The deputy knew that "most probation restrictions are that you can't lie about being on probation [and] that you can't drink as well," and he immediately told defendant, "Stop, you're not free to go at this point. * * * I know you're on probation and you're lying about it." Defendant then admitted that he was on probation and informed the deputy that his probation conditions included a prohibition against alcohol consumption.

The deputy then relayed the facts to a probation officer on the phone, who told him to advise defendant that his probation conditions required him to consent to a search. After the deputy did so, the deputy again requested consent to search, and defendant replied, "Well, I guess I have to." The deputy said, "No, you don't have to. You can say 'yes' or 'no.'" Defendant asked what would happen if he refused to consent, and the deputy replied, "Well, we'll cross that bridge when we come to it." The probation officer directed the deputy to advise defendant that his refusal to consent to a search could result in his arrest.[1] Defendant consented to a search which yielded contraband that led to the convictions at issue. Probation conditions do not always prohibit the consumption

---

[1] The probation officer testified that, at the time of the phone call, she believed that defendant's probation conditions prohibited him from consuming alcohol. Her testimony does not establish whether she informed the deputy of that belief.

of alcohol and, contrary to defendant's statement to the deputy, his probation did not actually include such a prohibition.

The trial court found that the deputy stopped defendant when he instructed defendant that he was not free to leave. The court further found that the deputy had a "subjective belief that [defendant] was in violation of the terms of his probation by consuming alcoholic beverages[, and] had lied about not consuming alcoholic beverages * * *." Defendant also had denied that he was on probation and had made several "unusual movements and responses," such as repeatedly placing his hands in his pockets after being instructed not to do so, and those actions had increased the deputy's suspicion of a probation violation. The court concluded that the deputy had reasonable grounds to believe that defendant had violated his probation and therefore was entitled to further investigate whether a probation violation had indeed occurred. The court further concluded that a search would have been authorized whether defendant consented or not because the probation officer had reasonable grounds to direct the deputy to conduct the search to investigate whether defendant was in violation of his probation.

On appeal, defendant asserts that the evidence was obtained through the exploitation of an illegal stop and involuntary consent to a search because the deputy did not have statutory authority to stop defendant based on suspicion of a probation violation and that the stop violated his rights under Article I, section 9, of the Oregon Constitution. Defendant argues that the deputy did not have authority to stop him based on a reasonable suspicion that he had violated his probation because a probation violation is not a crime under ORS 131.615 and that defendant did not have an alcohol restriction as a condition of his probation. Also, defendant argues that the deputy did not have subjective or objective reasonable suspicion of a crime to justify stopping him and further that defendant's consent to search was not voluntary. We conclude, consistent with the state's arguments, that the deputy had authority to stop defendant, that the stop was justified by reasonable suspicion, and that defendant's consent to the search was voluntary.

■■    Defendant argues that a probation violation is not a crime and therefore the deputy did not have statutory authority to stop defendant on suspicion of a probation violation. We do not need to address whether a violation of probation is a crime because, in any event, the deputy had authority to stop defendant under ORS 137.545(2). A police officer may arrest a probationer for violation of probation conditions. ORS 137.545(2) provides, in part:

> "At any time during the probation period, * * * [a]ny parole and probation officer, police officer or other officer with power of arrest may arrest a probationer without a warrant for violating any condition of probation."

The authority to arrest a probationer for violation of a probation condition implies the authority to stop persons reasonably suspected of violating that probation condition. *See State v. Steinke*, 88 Or App 626, 629, 746 P2d 758 (1987) (statute authorizing an officer to arrest and take into custody a person without a warrant when the officer has probable cause to believe that the person has violated an abuse prevention restraining order implicitly authorizes officers to stop persons reasonably suspected of violating such an order). The deputy was aware that defendant was on probation for cocaine possession, and he had authority to investigate if defendant was in violation of his probation conditions. As we discuss below, the deputy reasonably suspected that defendant had violated his probation.

■ ■    We agree with the trial court that defendant was stopped when the deputy instructed defendant that he "was not free to leave." *See State v. Hall*, 339 Or 7, 19, 115 P3d 908 (2005). To comply with Article I, section 9, that stop had to be justified by reasonable suspicion.

> "[T]here are three generally recognized categories of street encounters between policeman and citizen. In descending order of justification, they are: (1) arrest, justified only by probable cause; (2) temporary restraint of the citizen's liberty (a 'stop'), justified by reasonable suspicion (or reliable indicia) of the citizen's criminal activity; and (3) questioning without any restraint of liberty (mere conversation), requiring no justification."

*State v. Warner*, 284 Or 147, 161, 585 P2d 681 (1978); *Steinke*, 88 Or App at 630 (stop is valid when officer has reasonable, articulable basis that stopped person has violated a restraining order).

■ Reasonable suspicion is "a belief that [is] objectively reasonable under the totality of the circumstances existing at the time and place" that the defendant took the actions at issue and that allows the temporary detention of persons in order to make a reasonable inquiry concerning whether a crime has been committed. *Ehly*, 317 Or at 79-80. During his investigation of defendant's sister and brother-in-law, the deputy developed reasonable suspicion that defendant had consumed alcohol in violation of his probation.

■ Reasonable suspicion, as a basis for an investigatory stop, does not require that the facts as observed by the officer conclusively indicate illegal activity but, rather, only that those facts support the reasonable inference of illegal activity by that person. *Id.* at 80. The facts that the deputy perceived were that defendant was on probation, was prohibited from consuming alcohol (later confirmed by defendant), and had consumed alcohol. Those perceived facts gave rise to a reasonable (though ultimately mistaken) belief that defendant had violated his probation. Defendant's guarded movements and his false denial that he was on probation likewise contributed to the deputy's belief that defendant had violated his probation.

■ The fact that subsequent information showed that defendant did not have a condition that prohibited alcohol consumption does not mean that the deputy lacked reasonable suspicion at the time he made the stop. *State v. Ingman*, 127 Or App 27, 30-31, 870 P2d 861, *rev den*, 319 Or 81 (1994) (officer mistakenly believed that the defendant was a felon, as reported by the dispatcher, and therefore a felon in possession of a firearm). Although the deputy ultimately was mistaken in his belief that alcohol consumption was prohibited by the terms of defendant's probation, his belief was objectively reasonable in light of his knowledge of typical probation terms; indeed, defendant and the probation officer shared the deputy's belief. "[A]n 'officer's belief may be objectively reasonable even if it turns out to be incorrect.' " *State v.*

*Chilson,* 219 Or App 136, 139, 182 P3d 241, *rev den,* 344 Or 670 (2008) (quoting *State v. Tiffin,* 202 Or App 199, 203, 121 P3d 9 (2005)). The stop to investigate further therefore was supported by reasonable suspicion.

■ ■　 Defendant's subsequent consent to search likewise was valid. Article I, section 9, entitles the probationer a reasonable opportunity to refuse to allow the search. *State v. Davis,* 133 Or App 467, 473-74, 891 P2d 1373, *rev den,* 321 Or 429 (1995). A probation officer

"may order the arrest and detention of [a probationer, when the officer has] reasonable grounds to believe that [the probationer] has:

"(A)　Violated the conditions of * * * probation[.]"

ORS 144.350(1)(a).

Here, the deputy correctly informed defendant that he could refuse to consent to a search, while noting that such a refusal could subject him to arrest for a probation violation.[2] *Davis,* 133 Or App at 476 (the defendant submitted to a reasonable search, a condition of his probation, and "[o]ther than the pressure on defendant not to violate the terms of his probation, there was nothing coercive about the circumstances"); *see also State v. Dunlap,* 215 Or App 46, 168 P3d 295 (2007) (defendant had an opportunity to refuse to consent to a search). We conclude that defendant validly consented to the search.

Affirmed.

---

[2] We agree with the trial court that the probation officer had reasonable grounds to believe that defendant was in violation of a condition of his probation and had the authority to order his arrest.