Argued and submitted November 7, 2012, Woodburn High School, Woodburn, Convictions on Counts 3 and 4 reversed and remanded; remanded for resentencing; otherwise affirmed January 9, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PATRICK DEAN MARSHALL,
*Defendant-Appellant.*

Umatilla County Circuit Court
CFH080360; A146945

295 P3d 128

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and De Muniz, Senior Judge.

HASELTON, C. J.

## HASELTON, C. J.

Following a jury trial, defendant appeals a judgment of conviction for felon in possession of a firearm, ORS 166.270, and theft in the first degree by receiving, ORS 164.095.[1] Defendant assigns error to the trial court's denial of his motion to suppress evidence discovered during a warrantless search of an RV trailer, contending that his consent to a search was improperly induced by an investigating police officer who gave a false promise of immunity. Or Const, Art I, § 9.[2] We conclude that defendant's consent was not voluntary, and the trial court's error in denying defendant's motion to suppress was not harmless.[3] Accordingly, we reverse and remand defendant's convictions for felon in possession of a firearm and first-degree theft and remand for resentencing.

In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact to the extent that there is sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). The determination of whether the predicate circumstances are sufficient to establish voluntariness is a matter of law, which we "assess independently." *State v. Acremant*, 338 Or 302, 324, 108 P3d 1139, *cert den*, 546 US 864 (2005). We review whether the predicate circumstances are sufficient to establish voluntariness for errors of law. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991). Further, "[i]n analyzing whether consent to a search is voluntary, the relevant inquiry is whether, under the totality of the circumstances, the consent was the product of the defendant's free will or, conversely, was the result of express or implied coercion." *State ex rel Juv. Dept. v. Stephens*, 175 Or App 220, 225, 27 P3d 170 (2001).

---

[1] Defendant was also convicted of unlawful distribution and possession of methamphetamine, but does not challenge those convictions on appeal.

[2] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[3] Because we reverse on state constitutional grounds, we do not reach defendant's alternative contention that the Due Process Clause of the Fourteenth Amendment to the United States Constitution "mandates enforcement of a governmental promise."

Defendant managed an RV trailer park in Umatilla, where he lived in a converted bus and kept a shop behind his residence. On January 31, 2007, during the investigation of an unrelated crime, an individual, Mercer, informed Umatilla County Sheriff's Office Detective Dixon that defendant had recently provided him methamphetamine. Mercer also told Dixon that defendant "had a large cabinet of stolen jewelry *** in [defendant's] camp trailer." On February 15, Oregon State Trooper Wilson interviewed Barnes, an inmate in the Umatilla County Jail, regarding defendant's activities. Barnes told Wilson that he had purchased drugs from defendant and that Barnes thought that defendant had stored some stolen jewelry in what he believed to be defendant's "camp trailer." Based on those reports of defendant's drug activity, Wilson obtained a search warrant for defendant's bus and shop.[4]

On February 21, 2007, defendant was at his residence when Dixon, Wilson, and nine other police officers arrived to execute the search warrant. Wilson told defendant that "we knew that [defendant had] been selling drugs out of his residence there and we were there to shut that operation down"; defendant responded, "[you] just did." Defendant cooperated when Wilson patted him down and led him to the back of a patrol car, where Wilson read defendant the search warrant and advised him of his *Miranda* rights. Defendant acknowledged that he understood those rights, and then admitted that the officers would find methamphetamine in his bus.

During the search of defendant's bus and shop, officers discovered methamphetamine, drug paraphernalia, and property that had been reported stolen, including valuable china and Coca-Cola glassware and collectibles. Officers also found two bills of sale for a 1975 Prowler RV that was located in another space on the other side of the same RV park—and which had not been included within the scope of the search warrant. One of those bills of sale listed Travis Davis as the seller and Elton Long as the buyer. The

---

[4] Wilson testified that he "found out about" the RV from Dixon after he "had the search warrant done and signed by the judge," but before police executed the warrant.

other listed Elton Long as the seller, and the space for the buyer's name had been left blank.

When Dixon asked defendant about the RV, defendant asked to speak with Wilson. Defendant told Wilson that he was holding the RV for former park tenants, Davis and Long, for back rent that they owed and that it "was full of property *** that he kind of figured *** was stolen property." Specifically, defendant told Wilson that he "had been in the trailer a couple of times and he [had seen] what he believed to be a gun that was wrapped up[,] *** a lot of Coca-Cola stuff, a TV set and some other property," which defendant maintained that Davis and Long had placed in the RV.

Because the RV was not included in the search warrant, Wilson asked defendant for consent to search. Defendant disclaimed ownership of the property in the RV and told Wilson that "he did not want to be charged with anything in the trailer," and that he would not consent to the search unless and until he had that "in writing."

In response, Wilson altered a preprinted "Voluntary Consent to Search" form. Specifically, Wilson, in his own handwriting, inserted the language emphasized below, so that the consent form read as follows:

"I, _Patrick D. Marshall_, do hereby freely give the below signed peace officer (or any peace officer in the State of Oregon, as defined by ORS 161.015) consent to search the following described property;

" '_75 Prowler RV / trailer_ ***

"I certify that I have not been coerced, threatened, or made any promises concerning the results of such search, except those stipulated herein:

"_Mr. Marshall is not responsible for the property stored inside the RV Trailer! MSW_ [Trooper Wilson's initials]

"By signing this form, I acknowledge that I am giving voluntary permission for this search[.] ***

"Furthermore, I understand that I have the right to refuse permission for the search; and that I can stop the search at any time."

(Handwritten insertions emphasized.) Defendant signed the consent form, as so modified by Wilson.[5]

In the ensuing search of the RV, officers found, among other items, a flat-screen TV, a shotgun wrapped in a blanket, Coca-Cola glassware and collectibles, and a cabinet full of jewelry. Much of that property had been reported stolen.

Based on the searches, defendant was charged with unlawful delivery of methamphetamine and unlawful possession of methamphetamine, as well as felon in possession of a firearm, ORS 166.270 (Count 3),[6] and theft in the first degree by receiving, ORS 164.095 (Count 4).[7]

Defendant filed a pretrial motion to suppress evidence found in the RV, arguing that his consent was involuntary because it was based on an improper inducement—*viz.*, defendant understood Wilson's modification of the consent form to constitute a promise of immunity from prosecution for items found inside the RV, and, but for that assurance, defendant would never have consented to the search.

At the suppression hearing, Wilson testified on direct examination regarding the circumstances of defendant's purported consent:

"[PROSECUTOR]:   Did [defendant] consent verbally to you going in[to the RV]?

---

[5] Shortly thereafter, while officers searched the RV, Wilson provided defendant another form, titled "Statement of Facts." On that form, defendant added the following handwritten disclaimer:

"The trailer in question was brought in my possession for back space rent. Travis Davis and Elton Long names are on the bill of sale for when the paper work is received by self[,] Pat Marshall. I pay owners of RV Park [$]300.00 for back rent and the trailer would be mine the contents of the trailer I have no right or not [*sic*] responsible for contents of said trailer just holding trailer for rent. I was keeping an eye on trailer to let Elton know it was ok[.]"

[6] ORS 166.270 provides, in part,

"Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any firearm commits the crime of felon in possession of a firearm."

[7] ORS 164.095 provides, in part, "A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft."

"[WILSON]: Yes. Before he did that, though, he wanted—he advised me that he didn't want to be charged with anything in the trailer and that he wanted that in writing.

"[PROSECUTOR]: Did you promise him that you weren't going to charge him with anything found in the trailer?

"[WILSON]: I did not promise Mr. Marshall anything. I advised him that if he wanted that written on the form, I would write that on the form."

Wilson testified further on redirect:

"[PROSECUTOR]: Trooper Wilson, when you executed this agreement, or when you signed this paper, let's not even call it an agreement, why did you write this out?

"[WILSON]: The form?

"[PROSECUTOR]: Yes.

"[WILSON]: To obtain verbal consent from Mr. Marshall to look inside that trailer.

"[PROSECUTOR]: And when you wrote it out, was it your intention—was this what you were writing because you believed that this was the case? I mean, was this written by you at your own instigation, or why did you write it, beyond wanting consent to search?

"[WILSON]: Why did I write that Mr. Marshall is not responsible for the—

"[PROSECUTOR]: Yes.

"[WILSON]: Because that's what he wanted wrote [sic] on the form before he would give us consent."

For his part, defendant testified that he would not have consented to the search "but for" the "stipulation and agreement" that he would not be charged in relationship to anything found in the RV.

The trial court denied suppression. In doing so, the court stated that "[t]here is no credible evidence from which to find that Wilson agreed and/or promised to give Defendant some type of immunity from prosecution in

return for his voluntary consent to search the trailer."[8] The court, consequently, determined that defendant's consent to search the RV was voluntary. The jury found defendant guilty on all counts.

Defendant appeals the judgment of conviction for felon in possession of a firearm and first-degree theft, assigning error to the trial court's denial of his motion to suppress. Defendant contends that the state failed to prove that he voluntarily consented to the search of the RV, because his consent was obtained by a false promise of immunity.

The state counters that the trial court properly denied defendant's motion to suppress, because "[t]he notation on the consent form merely memorialized defendant's asserted disclaimer of responsibility for the contents of his RV and was not a promise of immunity from prosecution." Furthermore, the state asserts that defendant's voluntariness argument relies on inapposite principles derived from case law concerning confessions. The state alternatively contends that, "[i]nasmuch as defendant voluntarily told police that stolen property and guns were located in the RV trailer before he gave consent to search it, the police inevitably would have discovered the evidence at issue because they unquestionably would have secured a warrant had he refused consent." Finally, the state argues that, even if the court erroneously denied defendant's motion to suppress, the error was harmless with respect to the theft conviction in light of the stolen property discovered during the course of the warranted (and indisputably lawful) search of defendant's bus.

By way of reply, defendant remonstrates that the state's inevitable discovery argument is unreviewable, because of insufficient development of a record pertaining

---

[8] Defendant and Wilson had given conflicting testimony as to whether the statement written on the consent form was accompanied by any verbal promise on Wilson's part not to charge defendant with any incriminating evidence found in the RV. Wilson testified that he had "[a]bsolutely not" made any verbal promise in connection to defendant's consent. Conversely, defendant testified that, in addition to writing the statement on the consent form, Wilson had promised him that he would not be charged with anything in the trailer if he consented to the search.

to whether police would have been able to secure a warrant to search the RV. Defendant also, as described in detail below, *see* 254 Or App at 434-35, proffers a closely reasoned response as to why the admission of the evidence from the RV could have affected the jury's assessment of his defense as to the items found in the bus and, thus, was not harmless with respect to his theft conviction. *See* ORS 164.055.[9]

With the arguments so joined, the central—and, ultimately, dispositive—issue in this case is whether Wilson's actions, with respect to obtaining defendant's consent to search the RV, so tainted that consent as to compel suppression. Under Article I, section 9, of the Oregon Constitution, a warrantless search is *per se* unreasonable, unless the search falls within an exception to the warrant requirement. *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). One such exception is voluntary consent to search:

> "Under the consent exception to the warrant requirement, the state must prove by a preponderance of the evidence that someone having the authority to do so voluntarily gave the police consent to search the defendant's person or property and that any limitations on the scope of the consent were complied with."

*State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994) (citing *State v. Paulson*, 313 Or 346, 351-52, 833 P2d 1278 (1992)).

When voluntariness is challenged, we "examine the totality of the facts and circumstances to see whether the consent was given by defendant's free will or was the result of coercion, express or implied." *State v. Kennedy*, 290 Or 493, 502, 624 P2d 99 (1981). As with any exception to the warrant requirement, the state bears the burden of persuasion and must prove that defendant's consent was voluntary by a preponderance of the evidence. *Stevens*, 311 Or at 137. In that regard, although we are, as noted, bound by the trial court's findings of historical fact, we "must assess independently the ultimate legal determination of voluntariness." *Acremant*, 338 Or at 324.

---

[9] ORS 164.055 was amended in 2009, changing the value of property for first-degree theft by receiving from "$200 or more" to "$1,000 or more." Or Laws 2009, ch 16, § 3. That amendment does not affect our analysis.

In *Weaver*, the Supreme Court identified four general categories of consent cases:

> "those involving questions of the *voluntariness* of the consent, those involving the *authority* of the party consenting to the search, those involving questions of the *scope* of the consent, and those 'in which suppression of evidence obtained during a consent search may be necessary to vindicate a defendant's rights that were violated by earlier, unlawful police conduct.' "

319 Or at 219 (quoting *State v. Rodriguez*, 317 Or 27, 39, 854 P2d 399 (1993)) (footnotes omitted; emphases in original).

The touchstone of three of those "consent-to-search" genres (all except "authority") is autonomous choice: The lawfulness of the warrantless search derives from, and is innately circumscribed by, the unimpaired autonomous choice of the person giving consent. Here, defendant posits that his "consent" was elicited by "bait-and-switch" tactics of the investigating officer—*viz.*, the giving of an illusory promise of immunity—and, thus, was not the product of autonomous choice. That is, his "consent" was not consent at all.

While defendant forthrightly acknowledges that there is no Oregon appellate decision holding that an illusory inducement abrogates an ostensible consent to search, he invokes our precedents addressing the effect of promises of leniency on the voluntariness of admissions elicited during police interviews. We agree with defendant that those cases are highly instructive in that they are grounded substantively, albeit not exclusively, on the imperatives of autonomous choice.[10]

---

[10] We note that, although we have never had occasion to hold that an illusory inducement abrogates a consent to search, we have, at least parenthetically, referred to the *absence* of "promises" in *sustaining* a consent to search. *State v. Ry / Guinto*, 211 Or App 298, 308, 154 P3d 724, *rev den*, 343 Or 224 (2007) (noting that officer "did not raise his voice, draw a weapon, or employ any threats or *promises*. He simply requested consent \*\*\*." (footnote omitted; emphasis added)); *id.* at 308 n 7 ("But nothing that [the trooper] said or did indicated that defendants would receive *any benefit*, or be subjected to any detriment, based on whether they consented." (Emphasis added.)). *Accord State v. Rodal*, 161 Or App 232, 242, 985 P2d 863 (1999) (concluding that officers' statements did not render the defendant's consent involuntary where officers had probable cause to believe that marijuana was growing on the defendant's property and, in seeking consent to search, told the

In *State v. Tanner*, 236 Or App 423, 431, 236 P3d 775 (2010), we summarized the operative principles:

"Voluntariness requires that neither duress nor intimidation, *hope nor inducement* caused the defendant to confess. The test for voluntariness under Article I, section 12, is whether, under the totality of the circumstances, the waiver of rights and the confession were the product of an essentially free, unconstrained and informed choice or *whether the accused's capacity for self-determination was critically impaired. Threats, promises, inducements, and similar overreaching by the police have consistently led to suppression of a defendant's resulting statements and confessions*; by contrast, in the absence of police overreaching, challenges to the voluntariness of a defendant's statements or confessions have consistently failed. Under Article I, section 12, police overreaching is an essential predicate of a challenge to the admissibility of a statement or a confession as involuntary."

(Internal quotation marks, citations, and alterations omitted; emphases added.)

*State v. Goree*, 151 Or App 621, 632, 950 P2d 919 (1997), *rev den*, 327 Or 123 (1998), describes the analytical framework with particular respect to inducements to confess:

"To conclude that a defendant's will was overborne or that his capacity for self-determination was impaired by a promise of leniency requires findings that the defendant understood that there was, in fact, a promise of leniency, that the defendant's understanding to that effect was reasonable, that the defendant actually relied

---

defendant that they had probable cause to obtain a warrant but, if he consented to the search, the process would be shorter and he would be less likely to go to jail).

We further note that, although the aspect of autonomous choice is common to both voluntariness of an admission and voluntariness of consent to search, one requirement is not common to both—*viz.*, valid waiver of an accused's right against self-incrimination under Article I, section 12, of the Oregon Constitution must be both *knowing* and voluntary, whereas valid consent to search under Article I, section 9, need only be voluntary. *Compare State v. Vondehn*, 348 Or 462, 480-81, 236 P3d 691 (2010) (noting that a valid waiver of the right against self-incrimination must be both knowing and voluntary), *with State v. Hall*, 339 Or 7, 20, 115 P3d 908 (2005) ("[A]*ny* case in which the state relies upon a defendant's consent to validate a warrantless search, the state must prove by a preponderance of the evidence that the defendant's consent was voluntary." (Emphasis in *Hall*.)).

on that promise in confessing and that the defendant was reasonable in doing so."

(Citing, *inter alia*, *State v. Aguilar*, 133 Or App 304, 307-08, 891 P2d 668 (1995), and *State v. Pollard*, 132 Or App 538, 549, 888 P2d 1054, *rev den*, 321 Or 138 (1995)).

*Pollard* is exemplary. There, the defendant was convicted of murder by abuse after his infant child died from numerous and severe injuries. 132 Or App at 540. The defendant sought to suppress inculpatory statements that he had made during a noncustodial interview with a detective, Grossman. *Id.* at 544. During that interview, Grossman told the defendant that he could help him obtain psychiatric treatment if he told Grossman what had happened to the infant. *Id.* at 547. The defendant had explained to Grossman that he had been abused by his own father and that he thought that might have something to do with how he had treated his child. *Id.* at 546. Grossman reiterated that he could "help" the defendant only if he was "totally honest," and the defendant subsequently made various inculpatory statements. *Id.* at 547. The defendant filed a motion to suppress those statements, arguing that they had been "induced by the detective's implied promises of treatment instead of criminal prosecution." *Id.* at 543. The trial court denied that motion, and the defendant was subsequently convicted of murder by abuse. *Id.* at 548.

On appeal, we determined that the defendant reasonably could have interpreted Grossman's statements as promises of treatment instead of prosecution. *Id.* We explained:

"An implied promise of immunity from prosecution is sufficient to compel suppression of a confession:

"'The precise form of words in which the inducement is presented to the prisoner's mind is immaterial. It is sufficient if they convey to him the idea of temporal benefit or disadvantage, and his confession follows in consequence of the hopes thereby excited.' *State v. Wintzingerode*, 9 Or 153, 163 (1881)."

*Id.* at 544. We concluded, in *Pollard*, that "[t]he *quid pro quo* was apparent"—and accordingly, we reversed and remanded

for a new trial, because the state had "failed to sustain its burden of proving the voluntariness of [the] defendant's statements." *Id.* at 548-49.

The application of the foregoing principles to the circumstances here is straightforward. *First*, defendant "understood that there was, in fact, a promise" of immunity, and his "understanding to that effect was reasonable." *Goree*, 151 Or App at 632. With due respect, and notwithstanding the trial court's "finding" that there was no "promise of immunity," that determination is unsupported on this record. Rather, the record permits *only* the contrary determination. Whether an objectively reasonable person would have understood Wilson's amendment to the consent form to constitute a promise of immunity is a legal determination. *Accord State v. Baker / Jay*, 232 Or App 112, 128, 221 P3d 749 (2009), *rev den*, 348 Or 280 (2010) (applying a reasonable person standard to limitations on the scope of consent and explaining that "[o]nce the facts have been determined, the scope of consent is a question of law"); *see also Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 261 (1968) ("[W]e are not bound by a trial judge or jury's finding of voluntariness if we believe the historical facts upon which such finding is based are insufficient to meet constitutional standards."). Specifically, as noted, the preprinted text of the consent-to-search form, which immediately preceded Wilson's hand-written notation, stated:

"I certify that I have not been coerced, threatened or *made any promises* concerning the results of such search, *except those stipulated herein.*"

(Emphasis added.) Immediately following, Wilson then inserted:

"Mr. Marshall is not responsible for the property stored inside the RV Trailer!"

Wilson acknowledged that he added that language because defendant "didn't want to be charged with anything in the trailer and that he wanted that in writing * * * before he would give [his] consent." Given the totality of the circumstances, a reasonable person in defendant's position would have believed that the terms of the written consent

form did, in fact, constitute a promise of immunity. *See, e.g., Aguilar*, 133 Or App at 308 (explaining that we view the voluntariness of a confession from the perspective of a reasonable person in the defendant's circumstances).

*Second*, defendant actually relied on Wilson's promise in consenting to the search and that reliance was reasonable. *See Goree*, 151 Or App at 632. Again, Wilson testified that he altered the voluntary consent form with a specific purpose of obtaining defendant's consent—and that defendant would not have otherwise consented. *See* 254 Or App at 425. Thus, Wilson's testimony established that defendant, in giving his consent, actually relied on what he believed was a promise of immunity with respect to the contents of the RV. Further, that reliance was reasonable. Wilson, a law enforcement officer, inserted a qualifying disclaimer in an official form at a citizen's request. He never told defendant that he could not do so because of any purported lack of authority, much less tell defendant that, even if inserted, the ostensible assurance was illusory. Under those circumstances, a person in defendant's position could reasonably rely on the ostensible promise—as defendant did here.

Before proceeding with the balance of the analysis of the consequences of defendant's misbegotten consent to search, we pause to acknowledge that—as the state asserts—voluntariness with respect to statements given in response to police questioning and voluntariness with respect to consent to search are not congruent. Although each is fundamentally predicated on "free [and] uncon-strained" choice, *Tanner*, 236 Or App at 431 (internal quotation marks omitted), the former also partakes of an additional concern—*viz.*, that *any* material inducement, even a *real and substantial* (as opposed to illusory) inducement, might elicit a false confession. *State v. Nunn*, 212 Or 546, 564, 321 P2d 356 (1958), *overruled in part on other grounds by State v. Neely*, 239 Or 487, 395 P2d 557 (1964), *modified on reh'g*, 239 Or 487, 398 P2d 482 (1965), *and State v. Brewton*, 238 Or 590, 395 P2d 874 (1964). That concern, pertaining to the *reliability* of information obtained is, to be sure, generally inapposite in the context of consent

to search. In all events, however, we need not determine here whether, if ever, the provision of some real inducement as consideration for consent to search could ever abrogate the voluntariness of such consent because here, at least, Wilson's false inducement subverted defendant's autonomous choice, rendering his purported consent involuntary.[11]

In sum, as in *Pollard*, 132 Or App at 549, "[t]he *quid pro quo* was apparent": But for Wilson's promise that he would not be held responsible for the contents of the RV, defendant would never have consented to the search of the RV. That promise proved to be false, as defendant was charged with evidence discovered during that search. Under those circumstances, defendant's "capacity for self-determination was critically impaired," *Tanner*, 236 Or App at 431, abrogating his purported consent. The warrantless search of the RV did not fall within the consent exception.

The state asserts, nevertheless, that the denial of suppression (and defendant's consequent convictions) should be affirmed on an alternative basis: inevitable discovery. To prevail on that contention, the state must establish "by a preponderance of the evidence: (1) that certain proper and predictable investigatory procedures would have been utilized in the instant case, and (2) that those procedures inevitably would have resulted in the discovery of the evidence in question." *State v. Miller*, 300 Or 203, 226, 709 P2d 225 (1985), *cert den*, 475 US 1141 (1986).

The state concedes that it did not raise that contention before the trial court and acknowledges that the record, as presented for our review, may be insufficiently developed to establish the requisites of "inevitable discovery." That concession is well taken. Indeed, the record is

---

[11] The state suggests that Wilson's written statement did not "interfere[ ] with [defendant's] capacity for self-determination" because *defendant*, and not Wilson, "proposed and formulated the added wording to the consent form." That suggestion ignores the reality that Wilson, with full awareness that defendant would not execute the consent form without the qualifying language, inserted the disclaimer into the form, signifying the state's acceptance of that condition. It also, and just as significantly, ignores the reality that defendant's consent was, in fact, predicated on the assurance on which the state subsequently reneged. With respect, the principled extension of the state's logic would mean (in another context) that a seller's fraudulent agreement to a buyer's request for certain warranties did not "interfere with (the buyer's) capacity for self-determination."

silent as to whether officers would have inevitably obtained a warrant and searched the RV in the absence of defendant's consent. Nonetheless, the state requests that we remand the case to allow the circuit court to further consider that matter. We decline to do so. The state, as the proponent of the evidence obtained from a warrantless search, had the opportunity—indeed, the obligation—to develop a record sufficient to substantiate any and all grounds on which it might seek to justify the admission of that evidence. To hold otherwise would invite piecemeal presentation and *seriatim* appeals of suppression disputes. We decline to do so.

Finally, we address the state's harmless error contention. The state does not contend that the error was harmless with respect to defendant's conviction for felon in possession—nor could it so contend, because the weapon on which that conviction (Count 4) was predicated was found in the RV. However, with respect to the first-degree theft conviction, the state posits that, even if the trial court erroneously admitted the evidence from the RV, that error was harmless because "[s]ufficient evidence of stolen property found inside [defendant's residence] established his guilt of first-degree theft wholly independent of anything found in his RV." In particular, the value of the stolen property found in defendant's residence far exceeded that required under ORS 164.055, even without reference to the property discovered during the unlawful search.

Defendant counters that, regardless of the value of the property found in his residence, admission of the items found in the RV could have prejudicially affected the jury's consideration of his purported culpable mental state. In particular, the theory of defense at trial was that defendant did not know that any of the property that he possessed *in his residence* was the subject of theft, and that he did not have a direct interest in the stolen property in the RV. According to defendant, the only evidence of defendant's awareness that he might possess stolen property was that defendant had told Wilson that he "figured" that the property in the RV was stolen, including, specifically, Coca-Cola items similar to those found in his residence.

Evidentiary error is harmless only if there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). "In that inquiry, we ask whether we can conclude that the admissible facts present such convincing evidence of guilt that it is highly unlikely that there were wavering jurors who would have voted for acquittal but for the inadmissible facts." *State v. Bradley*, 253 Or App 277, 284, 290 P3d 827 (2012) (internal quotation marks and alterations omitted).

Upon review of the record, we conclude that the error was not harmless. The state did not adduce any direct evidence that defendant knew that the stolen property that was found in his bus and shop "was the subject of theft." ORS 164.095. To be sure, the jury *could* have inferred that defendant had "good reason to know" that the property that he had obtained was stolen. Nevertheless, in light of defendant's theory at trial—*viz.*, that he did not know that any of the property in his bus had been stolen—and his admitted suspicion that the property in the RV had been stolen, we cannot conclude that there is "little likelihood" that the admission of the property found in the RV affected the verdict.[12] Accordingly, the error with respect to the denial of the motion to suppress was not harmless with respect to the theft conviction.

Convictions on Counts 3 and 4 reversed and remanded; remanded for resentencing; otherwise affirmed.

---

[12] Indeed, in closing argument, the prosecutor emphasized the connection between defendant's knowledge regarding the stolen property found in the RV and stolen property found in defendant's residence—that is, that the former corroborated culpable knowledge with respect to the latter.