No. 231 April 1, 2026 51

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CORY LEE HAMILTON,
*Defendant-Appellant.*

Union County Circuit Court
23CR27296; A183449

Thomas B. Powers, Judge.

Argued and submitted February 4, 2026.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Megan Mizuta, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

In this criminal case, defendant appeals his convictions for felony fourth-degree assault, second-degree disorderly conduct, and resisting arrest, arguing in his sole assignment of error that the trial court erred in denying his motion to suppress. The state concedes that the court erred but argues that, on remand, it should be allowed to develop an alternative legal theory that would allow it to avoid the suppression of the evidence at issue. Defendant argues that the state should not get a "second bite at the apple." As we will explain, we agree with defendant that in these circumstances the state is not entitled to pursue additional legal theories that it did not develop at the initial suppression hearing. Therefore, we reverse and remand with instructions to enter an order suppressing the evidence discovered after defendant was unlawfully seized.

BACKGROUND

The relevant facts are largely procedural, but we provide a short synopsis of the underlying facts for context.

One morning, La Grande police officers went to a Safeway parking lot due to reports of unlawful camping on the premises. Officer Carman saw defendant and another man walk out from behind an electrical box in a way that raised Carman's suspicion. Carman approached the two men and asked their names. Defendant initially ignored the question, but after repeated questioning, he eventually provided his first name. Upon hearing the name, Carman remembered defendant from prior interactions and verified that defendant was on post-prison supervision (PPS). Carman then walked over to the electrical box and saw two square pieces of tinfoil and a knife behind it. He suspected that defendant was in violation of his PPS conditions for drug use and/or possession of a weapon. Carman told defendant that he wanted to pat him down, but defendant started searching through his backpack. Carman removed the backpack, and defendant started searching through his own pockets. Carman told defendant to stop and grabbed him. Carman then searched defendant's person and found

drugs. Carman placed defendant under arrest. Defendant resisted, which led to the convictions on appeal.

Prior to trial, defendant moved to suppress evidence, arguing that Carman unlawfully seized him without reasonable suspicion. The state argued that Carman initially engaged in mere conversation with defendant and then developed reasonable suspicion of a PPS violation, which justified an investigatory stop. Notably, the state did *not* argue that, if defendant was subjected to an unconstitutional seizure, there was an applicable exception to the exclusionary rule that would save some or all of the resulting evidence from suppression. The trial court denied defendant's motion in accordance with the state's reasoning.

On appeal, defendant reprises the arguments he made below. After defendant filed his opening brief, we issued our decision in *State v. Miller*, 339 Or App 746, 748, 568 P3d 983 (2025), which explicitly held that police lack the authority to stop or arrest a person for PPS violations without an arrest order from the person's supervising officer. *Miller* led the state to concede error in this case. As a preliminary matter, the state concedes that a stop occurred at least by the time that Carman told defendant that he wanted to perform a pat down. In light of our holding in *Miller*, it then concedes that the trial court erred in concluding that that stop was justified by reasonable suspicion of a PPS violation. At oral argument, it also conceded that neither the consent nor officer-safety exceptions to the warrant requirement justified any search or seizure that occurred. Finally, the state acknowledges that the error requires reversal.

We accept the state's well-taken concessions. We agree that the trial court erred in denying defendant's motion to suppress because a stop occurred at least by the time that Carman told defendant that he wanted to perform a patdown and because that stop was not justified by reasonable suspicion or another exception to the warrant requirement. That error requires reversal and remand.

The only issue in dispute is the scope of remand. The state argues that it should have the opportunity to develop a new attenuation argument on remand—*i.e.*, an argument

that some or all of the evidence discovered after the unlawful seizure was sufficiently attenuated from the taint of the unlawful seizure so as to save it from suppression. *See, e.g.*, *State v. Wagner*, 339 Or App 1, 5, 566 P3d 1241 (2025) (explaining that evidence obtained following a constitutional violation is not subject to suppression if the state proves that the violation of defendant's rights was so attenuated from the discovery of the disputed evidence that the unlawful police conduct cannot be properly viewed as the source of that evidence). It argues that *Miller* was a significant change in the law such that it did not have a reason to present that attenuation argument previously and, therefore, should not be precluded from doing so on remand. Defendant argues that the state had the opportunity and obligation to make its attenuation argument at the prior suppression hearing and that *Miller* was not the type or degree of change in the law that would justify giving the state a second chance to establish the admissibility of its evidence.

## ANALYSIS

Under Article I, section 9, of the Oregon Constitution, warrantless seizures and searches are presumed to be unreasonable and the fruits thereof subject to suppression. *State v. McCarthy*, 369 Or 129, 141, 501 P3d 478 (2021); *State v. McHenry*, 272 Or App 148, 154, 354 P3d 750 (2015). Therefore, when a defendant moves for the suppression of evidence discovered following a warrantless search or seizure, it is the state's burden to prove either that there was an applicable warrant exception or that—despite police illegality—the evidence was not subject to suppression. *State v. James*, 336 Or App 55, 66, 560 P3d 747 (2024); *State v. Knapp*, 289 Or App 139, 148-49, 408 P3d 224 (2017).

Because of that burden and in furtherance of fairness and efficiency, we have held that the state is obligated at a suppression hearing to present any and all theories of admissibility it intends to rely on to overcome the presumptions of unreasonableness and suppression:

> "The state, as the proponent of the evidence obtained from a warrantless search, had the opportunity—indeed, the obligation—to develop a record sufficient to substantiate any and all grounds on which it might seek to justify the admission

of that evidence. To hold otherwise would invite piecemeal presentation and *seriatim* appeals of suppression disputes."

*State v. Marshall*, 254 Or App 419, 434, 295 P3d 128 (2013). If the state does not do so, it does not get a second chance on remand. *See State v. Lambert*, 265 Or App 742, 747-48, 338 P3d 160 (2014) (holding that we would not allow the state to develop on remand a record on inevitable discovery because the state was obligated to do so at the initial suppression hearing); *Marshall*, 254 Or App at 434 (same).

　　　That general rule is not without exception. We have allowed the state to present an alternative theory for the first time on remand where the state did not have the opportunity or the obligation to present that theory at the prior suppression hearing. For example, in *State v. Campoverde*, 317 Or App 347, 349, 505 P3d 466, *rev den*, 369 Or 785 (2022), we held that the trial court plainly erred in denying a motion to suppress because, while the appeal was pending, the Oregon Supreme Court held—contrary to longstanding caselaw— that an officer could not ask questions unrelated to the basis of a traffic stop during an unavoidable lull. But we recognized that, at the time of the suppression hearing, the state would have had little reason to doubt that it would prevail under the current state of the law. *Id.* at 355. Consequently, we concluded that it had no obligation to develop alternative arguments simply to guard against unforeseeable changes in settled law. *Id.*; *see also State v. Curry*, 336 Or App 72, 91, 560 P3d 694 (2024) (remanding for further development of the record where neither party "had the opportunity below to address the standard that we have now identified as governing" the legal issue (internal quotation marks omitted)).

　　　Returning to the case at hand, we understand the state to make two alternative arguments. First, it argues that the general rule announced in *Marshall* is in tension with our earlier holding in *State v. Gonzales*, 238 Or App 541, 544, 243 P3d 116 (2010) (*Gonzales II*), and that we should follow *Gonzales II*. Second, it argues that our holding in *Miller*—*i.e.*, that police lack the authority to investigate PPS violations without prior authorization—was the type of change in the law that deprived it of the opportunity or obligation to develop

its attenuation argument during the prior suppression hearing. We address each argument in turn.

First, we agree that there is an apparent tension between *Marshall*'s approach and *Gonzales II*. In *State v. Gonzales*, 236 Or App 391, 396 & n 3, 236 P3d 834, *opinion adh'd to as modified on recons*, 238 Or App 541, 243 P3d 116 (2010) (*Gonzales I*), the defendant moved to suppress evidence solely under the federal constitution, arguing that police lacked the authority to impound and inventory his car. On appeal, the state maintained that police did have authority for both acts. *Id.* at 396. In the alternative, the state argued that the federal exclusionary rule did not apply either because the good-faith exception applied or because the defendant did not have a possessory interest in the car. We agreed with the defendant that the police lacked the authority to impound and inventory the car, and we rejected the state's alternative arguments outright, because the state had not made those arguments below and, therefore, did not develop the record in a manner that would allow us to affirm on those alternative bases. *Id.* at 396-97, 403. We concluded that "the warrantless seizure of the car was unlawful and that the evidence discovered in the subsequent inventory should have been suppressed." *Id.* at 403.

The state petitioned for reconsideration, arguing that it should have the opportunity on remand to present its alternative theories—*i.e.*, the good-faith exception and the defendant's lack of a possessory interest. *Gonzales II*, 238 Or App at 543. The state argued that it should be allowed to do so because its alternative theories arose at a later stage of the suppression analysis:

> "According to the state, *** the alternative arguments relate to a step of the analysis that the trial court was not required to reach because it came to a dispositive conclusion at an earlier point in the analysis. The state asserts that 'the principles of judicial efficiency *** dictate that a party that has prevailed below can stop making its case before the trial court.'"

*Id.* at 544 (ellipsis in original). Meanwhile, the defendant "respond[ed] that the state [was] asking for a 'second bite at the apple.'" *Id.*

We agreed with the state. We explained that, where there are two successive theories of admissibility, the state need not present the second if it succeeds on the first. *Id.* We concluded the state was free to make its alternative arguments on remand, because "the state is not asking for an opportunity to revisit an adverse ruling. It is asking for an opportunity to raise issues that it was not required to raise at the first suppression hearing, given that the trial court ruled in its favor." *Id.* at 545.

Taken at face value, it is hard to reconcile *Gonzales II* with *Marshall*, which was issued only a couple years later and did not even mention *Gonzales II*, let alone explain its departure from *Gonzales II*. But we conclude that the two cases can be harmonized by recognizing that the disparate outcomes stem not from a divergence in legal analysis or in principle but from the implicit assumptions about the trial-court proceedings underlying their reasoning.

In *Gonzales II*, we did not discuss in detail the manner in which the suppression hearing was conducted. Yet, given our stated rationale, we were working from the understanding that, at the suppression hearing, the trial court's ruling curbed the state's opportunity to develop the record on alternative theories of admissibility. Once the court disclosed its ruling on the state's first theory, there was no need for it to develop the record for alternative theories further down the chain of analysis. On the other hand, *Marshall*'s reasoning recognized that the hearing at issue was not conducted in a piecemeal fashion, nor was the state's ability to make its record cut short. In *Marshall*, we understood that, as occurs in the majority of suppression hearings, the parties presented all of their evidence and presented all of their arguments, and then the trial court made its ruling. It is with that understanding that we said in *Marshall* that the state has "the opportunity—indeed, the obligation—to develop a record sufficient to substantiate any and all grounds on which it might seek to justify the admission of that evidence." 254 Or App at 434.

In short, the different results *Gonzales II* and *Marshall* do not appear to be the product of a differing analysis or rule of law but of a differing understanding of

facts on the ground. In this case, the suppression hearing tracked the pattern addressed by *Marshall*, and thus, we conclude that its general rule applies.

That brings us to the question raised by the state's remaining argument: Was *Miller* the type of change in the law that could be considered to have deprived the state of the opportunity or obligation to make its attenuation argument below? We conclude that it was not.

We begin by reiterating the scope of defendant's motion to suppress. Defendant's primary argument was that officers lacked reasonable suspicion to stop defendant, either because the stop occurred before they discovered the tinfoil and knife or because the tinfoil and knife did not supply reasonable suspicion of a PPS violation. Defendant did not make the argument that eventually prevailed in *Miller*. Nonetheless, it was the state's burden to prove the admissibility of its evidence, and a key focus of the state's arguments was the existence of reasonable suspicion that would justify the stop.

To that end, the state cited *State v. Hiner*, 240 Or App 175, 246 P3d 35 (2010), for the proposition that officers can stop people to investigate possible probation violations. By analogy, the state argued that police could also stop defendant to investigate possible PPS violations. But the holding in *Hiner* rested on the fact that a statute, ORS 137.545(2), specifically authorized officers to arrest probationers without a warrant for violation of a probation condition. *Id.* at 180. We held that "[t]he authority to arrest a probationer for violation of a probation condition implies the authority to stop persons reasonably suspected of violating that probation condition." *Id.* In this case, the state did not identify any similar statute that authorized an officer to arrest a person for violating PPS, nor did it identify any other controlling case law that would clearly justify a stop on suspicion of a PPS violation. That is all simply to say that the state did not enter the suppression hearing with clear, controlling precedent on its side. That is important because the lack of clear and controlling authority means that the state had every opportunity and obligation to develop any alternative argument it wished to rely on if the trial court were to conclude that there was no reasonable suspicion for the stop.

The premise underlying the state's argument on appeal is that, prior to *Miller*, the state would have been able to rely on the assumption that an officer is constitutionally permitted to stop a person to investigate a PPS violation and that that justifiable reliance would have relieved it of the obligation to present alternative arguments premised upon the illegality of the stop itself. From the state's perspective, *Miller* changed that state of the law by undermining the state's core assumption. It reasons that that unforeseen change should allow the state to develop its alternative argument on remand.

But we disagree with the state's underlying premise. Prior to *Miller*, there was *no* case law that we are aware of holding that an officer could stop someone to investigate a PPS violation without prior authorization of the person's supervising officer. Instead, *Miller* decided that issue as a matter of first impression, recognizing that there is no statute specifically authorizing police to arrest a person on suspicion of a PPS violation without prior authorization of the supervising officer. 339 Or App at 753-54. Therefore, the state's assumption below was not justified by any existing and controlling case law. That only reinforces the reality that the state's reasonable suspicion argument at the suppression hearing rested on shaky ground. Far from supporting the state's claim that it had no obligation to make its attenuation argument below, *Hiner* and *Miller* only reveal that the state *should* have hedged against the possibility of an adverse ruling by making any and all arguments it believed justified the admission of the evidence at issue.

In short, the state had the opportunity and obligation to develop any and all theories of admission that it wished to rely on in responding to defendant's motion to suppress—including its attenuation argument. Nothing about the manner in which the suppression motion was litigated or about our holding in *Miller* relieved it of either. We agree with defendant that the state should not get a second opportunity on remand to develop new arguments to avoid the suppression of the unlawfully obtained evidence in this case. Therefore, we reverse and remand with instructions to enter an order granting defendant's motion to suppress.

Reversed and remanded.