Argued September 8, affirmed December 6, 1967

STATE OF OREGON, *Respondent, v.* EDWARD J. DEMPSTER, *Appellant.*

434 P. 2d 746

*Robert L. Allen,* Portland, argued the cause for appellant. With him on the brief were Boyrie and Miller, Portland.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, HOLMAN and LUSK, Justices.

McALLISTER, J.

The defendant appeals from a conviction in Multnomah county of illegal possession of narcotics. He assigns as error only the denial of his motion to suppress as evidence the narcotics and a hypodermic syringe and needle taken from his person.

The evidence adduced at the hearing of the motion to suppress established the following basic facts. During the evening of January 6, 1966, the defendant was stopped on the street in Portland by Sergeant Kuntz, a police officer. The officer knew defendant and questioned him about his activities and learned that defendant was on probation. Defendant was not detained.

Two nights later as defendant was walking in the vicinity of 10th and Couch Streets in Portland he was again hailed by Sergeant Kuntz. The officer again questioned defendant about his activities and particularly about his association with one Ralph Lemon, who was suspected by the police of stealing from parking meters. The officer learned that defendant was living with Ralph Lemon. According to the officer he then requested defendant to accompany him "voluntarily, not under arrest," to the police station so that the sergeant could contact defendant's probation officer, check defendant's status and learn how the probation officer felt about defendant's association with Ralph Lemon. The sergeant testified that defendant agreed to accompany him to the police station and got in the officer's car. The sergeant then

called several other police cars to the scene and according to defendant sent them to find Ralph Lemon. A policeman from one of these cars rode to the station with the defendant and Sergeant Kuntz. En route Sergeant Kuntz advised defendant of his constitutional rights.

At the station defendant was taken to Sergeant Kuntz's office where he was left in the charge of another officer while the sergeant went to the Record Bureau to check the records concerning defendant. The sergeant returned from the Record Bureau bearing a bench warrant for defendant's arrest, which had been issued on December 21, 1965, for failing to appear in response to a complaint charging defendant with disregarding a traffic signal. Sergeant Kuntz showed the warrant to defendant, told defendant that he was under arrest, and then searched defendant and found on his person the narcotics and paraphernalia which are the subject matter of the motion to suppress.

The only material difference between the testimony of the defendant and of Sergeant Kuntz is whether defendant consented to go to the police station with the officer voluntarily, or was ordered to do so. Defendant testified that the officer said "I think you better get in the car, Dempster, while I check this out." According to the defendant he thought he was under arrest from the time he was ordered to get into the police car.

The state concedes that Sergeant Kuntz did not have probable cause to arrest defendant when he was first detained and that if defendant's initial detention amounted to an arrest it was unlawful. We find it unnecessary to decide whether defendant was arrested when he got into the police car to go to the station

with Sergeant Kuntz. See, however, *State v. Krogness,* 238 Or 135, 139, 388 P2d 120, cert. den. 377 US 992, 84 S Ct 1919, 12 LEd2d 1045 (1964). Defendant concedes that at the police station he was shown the bench warrant and told that he was being arrested pursuant to the warrant. Defendant further testified that he was not searched until after his arrest at the police station under the warrant.

■■ Defendant contends that his initial detention amounted to an arrest, that the arrest was unlawful and that any subsequent search was tainted with the illegality of the initial arrest. Defendant argues that the evidence taken from him was the "fruit" of an illegal arrest and relies on *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 LEd2d 441 (1963). We think that case does not support defendant's position. Assuming that defendant's initial detention was an unlawful arrest, nevertheless, defendant was lawfully arrested at the police station before he was searched. The validity of the bench warrant is not challenged, and when the sergeant found the warrant he was bound to obey its command and arrest defendant.

A reasonable search incident to a lawful arrest is legal. *State v. Elkins,* 245 Or 279, 422 P2d 250, 251 (1966); *State v. Roderick,* 243 Or 105, 108, 412 P2d 17 (1966); *State v. Chinn,* 231 Or 259, 266, 373 P2d 392 (1962). The record does not disclose whether the search of defendant was a general search or a routine taking of his property before locking him up. In either event it appears that the search was incident to the arrest.

We need not speculate what our holding would be if Sergeant Kuntz had not fortuitously found in the files a bench warrant for defendant's arrest and, never-

theless, had searched defendant's person and seized the narcotics. The lawful arrest on the bench warrant purged the search incident thereto of the taint of any illegality in the detention of defendant prior to that time. In the language used in *Nardone v. United States*, 308 US 338, 60 S Ct 266, 84 LEd 307, 312 (1939), the connection between the alleged illegal arrest and the subsequent search had "become so attenuated" by the intervening legal arrest "as to dissipate the taint." See also, *Wong Sun v. United States*, supra, at 9 LEd2d 455.

The judgment is affirmed.

O'CONNELL, J., dissenting.

We have here another case in which the police, not having grounds for a lawful search, maneuver the suspect into a position where he can be detained until evidence of his guilt can be gathered. In this respect the case is not unlike *State v. Allen*, decided this day.

The majority opinion deems it unnecessary to decide whether defendant was arrested when he got into the police car to go to the police station with Sergeant Kuntz. I disagree. If defendant was unlawfully arrested (and I think that he was), the evidence which was gathered by the police as an incident to his unlawful detention should not be admissible in evidence. I know of no other way to discourage this kind of police practice—a practice which, if condoned, would permit arrest and detention without probable cause for the purpose of making exploratory searches. This is precisely the kind of police conduct the Fourth Amendment was intended to proscribe.

It is apparent that the initial arrest was a subter-

fuge employed to uncover evidence of defendant's guilt. Officer Kuntz explained that the purpose of asking defendant to accompany him to the police station was "so that I might contact his parole officer or his probation officer to ascertain just what his status was and what the probation officer felt about his current companion [referring to Ralph Lemon who was suspected of parking meter thefts]." Although officer Kuntz testified that he asked defendant "if he would accompany me to the station voluntarily, not under arrest," the invitation was made under such circumstances that it left the defendant no alternative but to accept. Kuntz called for assistance on his car radio and soon other police were on the scene. Defendant testified that "there were police officers all around the area." One of them got into Kuntz's patrol car so that defendant was between the two officers. On the way to the station defendant was not permitted to put his hand in his pocket to get a cigarette. Kuntz felt it necessary to advise defendant of his rights defined in *Miranda,* later explaining to the court that he did so "because of the fact that there were certain elements in my mind or certain thoughts in my mind that later Mr. Dempster might be questioned relative to the thefts from the parking meters * * * *."

When defendant and the officers arrived at the police station, Kuntz, "seated Mr. Dempster in a chair" and then "proceeded to the Record Bureau for a routine check of our records, which is normal in any investigation," during which time "I had another officer remain in the room with him," all of which quite clearly suggests that defendant was not free to leave and also that the purpose of the detention was not for the purpose of getting in touch with defendant's parole

or probation officer but to make an "investigation" in the hope of finding evidence sufficient to warrant an arrest and a search incident to it.

The majority opinion takes the position that even if the initial arrest was unlawful, the subsequent arrest at the police station was lawful and the search made there can be sustained as "a reasonable search incident to a lawful arrest."

The crime for which defendant was arrested was his failure to appear in response to a complaint charging him with disregarding a traffic signal. In my opinion, a police officer is not entitled to search a person when the only basis for the search is the citizen's failure to appear in court on a charge of violating a minor traffic regulation.

SLOAN, J., joins in this dissent.