Argued and submitted January 10, affirmed November 5, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN ARLAND LANGSTON,
*Defendant-Appellant.*

Multnomah County Circuit Court
050331175; A130595

196 P3d 84

James N. Varner argued the cause and filed the brief for appellant.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Wollheim, Presiding Judge, and Sercombe, Judge, and Riggs, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals his conviction for two counts of identity theft, ORS 165.800, and assigns error to the trial court's denial of his motion to suppress. Defendant contends that he was unlawfully stopped by police officers without reasonable suspicion of criminal activity and that evidence obtained after that stop should be suppressed because it was derived from the preceding illegality. We review for errors of law, *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993), and affirm.

On March 12, 2005, Portland Police Officers Stensgaard and Leitgeb were sitting in their parked patrol car across the street from a 7-Eleven convenience store. The officers watched defendant leave the store, get into an automobile, and back out of a space in the store's parking lot. As he did so, the car began making "herky-jerky" motions. Defendant quickly pulled back into the parking space, got out of the vehicle, and raised the hood. Jenkins, defendant's passenger, remained in the vehicle.

Concerned that defendant was having engine trouble, Leitgeb used a bullhorn to call out to defendant and ask if he needed help. Stensgaard and Leitgeb then drove over to the store's parking lot to speak with defendant. Leitgeb parked the patrol car on the side of and perpendicular to defendant's vehicle but did not block its egress. The police officers approached defendant, who was standing near the hood of the car. Leitgeb asked defendant for his identification; defendant said that he did not have his identification with him. Leitgeb then asked for and obtained defendant's name and date of birth. She planned to use that information to run a warrant check on defendant. However, she did not tell defendant of her plan or conduct the warrant check in defendant's presence. Defendant testified that he "figured [the police] were going to" run a warrant check, but that he "didn't know for sure." There was no other questioning of defendant by the police officers.[1] The inquiry revealed that

---

[1] The police officers apparently removed themselves from defendant's presence. Defendant testified that he gave his name and date of birth to the police

defendant had a "statewide felony warrant." Leitgeb returned to defendant's car and immediately arrested him. The entire encounter with defendant was peaceful; the officers made no threats or demands of defendant, and they did not draw their weapons.

After defendant's arrest, the officers determined that neither defendant nor Jenkins owned the car. They arranged for the car to be towed and conducted an inventory search of the vehicle. Inside, officers found a backpack that defendant claimed as his own. The search of that backpack and the vehicle revealed items that suggested that defendant may have been guilty of the crime of identity theft. Defendant was subsequently indicted on identity theft charges.

Defendant made a pretrial motion to suppress evidence "obtained as a result of the stop, detention, interrogation, arrest and search of [defendant] by officers of the Portland Police Department." Defendant argued that he was illegally stopped when Leitgeb asked for his name and date of birth, that the inventory search of the vehicle was not conducted pursuant to properly authorized administrative procedures, that the seizure of his backpack was an unlawful search incident to arrest, and, finally, that all evidence derived from the unlawful search and seizure must be suppressed as "fruit of the poisonous tree." After a hearing, the trial court orally denied defendant's motion to suppress without making any relevant findings.[2]

On appeal, defendant abandons his arguments on the inventory search of the vehicle and the seizure of his backpack as an unlawful search incident to arrest. He contends only that he was illegally stopped under Article I, section 9, of the Oregon Constitution when the officer asked for his name and date of birth, because the officer lacked reasonable suspicion that he was involved in criminal activity, and

---

officers when they were parked across the street from the convenience store. Defendant said he then left the officers for "two or three minutes" before they placed him under arrest.

[2] Where a trial court makes no factual findings and there is evidence from which the facts could be decided more than one way, we presume that the court found the facts in a manner that is consistent with its ultimate conclusion. *Ehly*, 317 Or at 74-75.

that "[i]t is that illegality that led to the officers learning of defendant's outstanding arrest warrant, and the arrest and seizure of both defendant's person and the vehicle and contents of the vehicle * * *."[3] Defendant relies on *State v. Thompkin*, 341 Or 368, 143 P3d 530 (2006), and *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), for the proposition that asking for identification for the purpose of conducting a warrant check, without reasonable suspicion that a crime has been or is about to be committed, constitutes an illegal restraint on a defendant's liberty and freedom of movement. Defendant further contends that any evidence seized following an unlawful stop of this nature should necessarily be suppressed. The state responds that

> "(1) simply asking someone for the person's name and date of birth and running a records check, outside the person's presence and without communicating that purpose to them, does not amount to a 'stop' or a 'seizure;' and (2) even if there had been a prior illegality, the discovery of the outstanding warrant purged any taint."

We need not determine whether defendant was unlawfully stopped by the police officers without reasonable suspicion of criminal activity. We agree with the state that the discovery of the outstanding arrest warrant and its subsequent execution interrupted any causal connection between any purported unlawful stop and the seized evidence and provided an independent and alternative basis for the search of the automobile and defendant's backpack. In *State v. Dempster*, 248 Or 404, 434 P2d 746 (1967), and *State v. Snyder*, 72 Or App 359, 695 P2d 958, *rev den*, 229 Or 251 (1985), the Supreme Court and this court held that an arrest based on an outstanding warrant can serve to attenuate the

---

[3] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *[.]"

Defendant also states in his brief that he relies on the Fourth Amendment to the United States Constitution. However, he does not make a separate argument that his federal constitutional rights were violated or that the outcome of this case should be different under the Fourth Amendment than under Oregon law. Therefore, we decline to consider defendant's federal claim. *See State v. Lane*, 135 Or App 233, 238 n 4, 898 P2d 1358, *rev den*, 322 Or 360 (1995) (stating principle); *State v. Underhill*, 120 Or App 584, 589 n 3, 853 P2d 847, *rev den*, 318 Or 26 (1993) (same).

link between unlawful police conduct and subsequently discovered evidence. We recently ratified that principle in two cases: *State v. La France*, 219 Or App 548, 558, 184 P3d 1169 (2008) ("[T]he discovery of the outstanding arrest warrants and their execution constituted intervening events that interrupted the causal connection between the seized evidence and the prior illegal stops and thereby provided an alternative lawful basis for the subsequent searches."), and *State v. Allen*, 222 Or App 71, 79, 191 P3d 762 (2008) ("[T]he intervening and independent event of the discovery of the outstanding arrest warrants operated to attenuate the taint of the prior unlawful arrest."). Applying the *Dempster / Snyder* rule to this case, the discovery and execution of the outstanding warrant for defendant's arrest purged the taint of any prior unlawful stop.

Affirmed.