Argued and submitted November 10, 2014, affirmed December 30, 2015

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

MARIO TERRELL JONES,
aka Mario Jones,
*Defendant-Respondent.*

Multnomah County Circuit Court
121235748; A154424

365 P3d 679

Leigh A. Salmon, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Laura E. Coffin, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

The state appeals the trial court's pretrial order granting defendant's motion to suppress. On appeal, the state asserts that the court erred in concluding that the Fourth Amendment to the United States Constitution compelled suppression of evidence that defendant possessed methamphetamine.[1] Defendant, in a cross-assignment of error, asserts that the trial court incorrectly concluded that the evidence was not subject to suppression pursuant to Article I, section 9, of the Oregon Constitution, and that the evidence should have been suppressed under that provision.[2] As explained below, we agree with defendant that, under the circumstances of this case, the evidence was subject to suppression under Article I, section 9, and, accordingly, we affirm.

The relevant underlying circumstances in this case are few and undisputed. One night, a law enforcement officer on patrol observed defendant walking on the sidewalk and then ducking into nearby bushes. The officer interacted with defendant and, as both parties agreed, unlawfully seized defendant during that interaction. As part of his encounter with defendant, the officer tried to obtain defendant's identification and questioned defendant about why he had stepped off into the bushes. After unlawfully seizing defendant, the officer ran a warrants check and discovered an outstanding warrant for defendant's arrest. The officer then arrested defendant on the warrant and placed him in the back of the officer's patrol car. The officer subsequently discovered methamphetamine in that area of the car.

Defendant was charged with unlawful possession of methamphetamine. He filed a pretrial motion to suppress in which he asserted that the officer had unlawfully seized him and that he was entitled to suppression of the evidence obtained thereafter under both state and federal law,

---

[1] The Fourth Amendment provides, in part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

[2] Under Article I, section 9, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

notwithstanding the officer's subsequent discovery of the arrest warrant and lawful arrest of defendant. At a hearing on defendant's motion, as noted, the state stipulated that defendant had been unlawfully stopped by the officer. The state presented no testimony at the hearing, and asserted that, in light of the stipulation, the only issue before the court was legal: whether the subsequent discovery of the warrant "cure[d] the bad stop."[3] Relying on *State v. Dempster*, 248 Or 404, 434 P2d 746 (1967), the state asserted that the discovery of the warrant "purges the taint of a bad stop." The trial court ultimately agreed that, under state law, the discovery of the arrest warrant purged the taint of the earlier police illegality. Accordingly, the court concluded that suppression was not appropriate under Article I, section 9. However, the trial court concluded that, under the Fourth Amendment, "the stop was unlawful, the warrant check was unreasonable," and, therefore, the evidence was subject to suppression. The court relied upon *United States v. Luckett*, 484 F2d 89 (9th Cir 1973), in which the Ninth Circuit Court of Appeals held that, where police unlawfully detained a defendant for the purpose of running a warrants check, evidence discovered following an arrest on the warrant was subject to suppression.[4] Accordingly, the trial court denied suppression under Article I, section 9, but granted the motion under the Fourth Amendment.

As noted, on appeal, the state asserts that the trial court erred in granting defendant's motion to suppress pursuant to the Fourth Amendment. Defendant cross-assigns error to the trial court's denial of the motion pursuant to Article I, section 9. Given the state's concession that defendant was unlawfully seized without reasonable suspicion, the state had the burden under either constitutional

[3] As the state acknowledges in a memorandum of additional authorities, it "opted not to present *any* evidence at the suppression hearing based on its belief that the parties' stipulation to the discovery of the valid arrest warrant was sufficient under then-binding precedent to justify the admissibility of the evidence." (Emphasis in original.) However, the trial court was presented with undisputed facts about the stop, and, based on those facts, the court set forth factual findings in its written order on the motion to suppress.

[4] In its discussion of the Fourth Amendment issue, the trial court also cited *U.S. v. Gross*, 662 F3d 393, 406 (6th Cir 2011), with the understanding that that case set forth the "three factors for attenuation as 'time, intervening circumstances, and purpose/flagrancy.'"

provision to demonstrate that the evidence in question was "independent of, or only tenuously related to, the illegal police conduct." *State v. Unger,* 356 Or 59, 84, 333 P3d 1009 (2014); *see State v. Bailey,* 356 Or 486, 508, 338 P3d 702 (2014) (in a Fourth Amendment analysis, the state has the "burden to establish attenuation"); *State v. Jackson,* 268 Or App 139, 151, 342 P3d 119 (2014) ("Whenever the state has obtained evidence following the violation of a defendant's Article I, section 9 rights, it is presumed that the evidence was tainted and must be suppressed."). Thus, the issue in this case is whether the state met its burden to establish attenuation.

At the time that the trial court ruled on the motion to suppress, under *Dempster,* 248 Or 404, and *State v. Snyder,* 72 Or App 359, 695 P2d 958, *rev den,* 299 Or 251 (1985), the rule was that the lawful arrest of a defendant on an outstanding warrant served to attenuate the link between unlawful police conduct and subsequently discovered evidence. *Dempster,* 248 Or at 408 (arrest based on outstanding warrant "purged the search incident thereto of the taint of any illegality in the detention of defendant prior to that time"); *see also State v. Benning,* 273 Or App 183, 194-95, 359 P3d 357 (2015) ("[T]he *'Dempster/Snyder* rule' became the basis for determining under Article I, section 9, the legal effect of the discovery and execution of an outstanding arrest warrant in cases involving prior unlawful police conduct."); *State v. Langston,* 223 Or App 590, 595, 196 P3d 84 (2008) (under the *"Dempster/Snyder* rule," the "discovery and execution of the outstanding warrant for defendant's arrest purged the taint of any prior unlawful stop"). However, after the parties filed their briefs on appeal, the Supreme Court decided *Bailey,* in which it disavowed its holding in *Dempster.* In *Bailey,* police officers unlawfully detained the defendant, who was a passenger in a car that was stopped. During the unlawful detention, officers ran a warrants check on the defendant, discovered an outstanding arrest warrant, arrested the defendant, and, during a search incident to arrest, discovered that the defendant possessed illegal drugs. The court considered whether, "under the Fourth Amendment, the discovery and execution of a valid warrant for defendant's arrest sufficiently attenuated the connection

between defendant's unlawful detention and evidence found in the search incident to his arrest so as to permit the state to use the evidence against defendant at trial." *Bailey*, 356 Or at 488. The court concluded that "*Dempster's per se* rule is inconsistent with the subsequent development of the Fourth Amendment attenuation exception set out in *Brown v. Illinois*, 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416 (1975), where the United States Supreme Court rejected such an approach." *Id.* Instead, according to the court, under *Brown*, in conducting an attenuation analysis, courts must consider three factors: "(1) the temporal proximity between unlawful police conduct and the discovery of the challenged evidence; (2) the presence of intervening circumstances; and (3) particularly, the purpose and flagrancy of the official misconduct." *Id.* at 488-89 (internal quotation marks omitted).

Thereafter, in *Benning*, we acknowledged that, in light of *Bailey*, *Snyder* was no longer "good law." 273 Or App at 196. We explained that, in determining whether the state had met its burden to demonstrate attenuation under Article I, section 9, we should apply the attenuation test set forth in *Unger*, in which we evaluate "the temporal proximity between the unlawful police conduct and the discovery of the challenged evidence; the presence of mitigating circumstances; the presence of intervening circumstances; the purpose and flagrancy of the unlawful police conduct; and the nature and extent of the constitutional violation." *Benning*, 273 Or App at 197 (citing *Unger*, 356 Or at 86). Thus, whether we are evaluating attenuation under Article I, section 9, or the Fourth Amendment, we consider essentially the same factors to determine whether the state has met its burden to demonstrate attenuation. We have recognized that the results under the tests set forth in *Unger* and *Bailey* are likely to be the same. *State v. Mitchell*, 273 Or App 207, 215 n 3, 360 P3d 525 (2015) (concluding that the trial court did not err in denying the defendant's motion to suppress under the Fourth Amendment attenuation test set forth in *Bailey*, and recognizing that the result under Article I, section 9, "would almost certainly" be the same).

In light of those cases, the state filed memoranda of additional authorities in which it asserts that the case should be remanded for a new suppression hearing. According to

the state, at the suppression hearing, it relied on "then-existing precedent" and "had no reason to consider other tactical choices or to develop a factual record that would satisfy the new attenuation standards that were not announced until *after* the parties presented their arguments on appeal." (Emphasis in original; internal quotation marks omitted.) Given the change in the "legal landscape," the state argues, the case should be "remanded for full record development and reconsideration in light of new precedent." We reject the state's assertion that the case should be remanded for a new suppression hearing.

As noted, in cases where the state seeks to introduce evidence obtained from an unlawful seizure, the burden has long been on the state to establish attenuation. *See State v. Hawkins*, 225 Or App 355, 364, 201 P3d 239 (2009) (where there was a minimal factual connection between the unlawful stop and the evidence sought to be suppressed, the state had the burden to establish that the evidence would have been obtained independently or that the connection between the seizure and the evidence was attenuated);[5] *Unger*, 356 Or at 84 (adhering to the requirement under *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), that the state prove that evidence was "independent of, or only tenuously related to, the illegal police conduct").

Moreover, the factors set forth in *Bailey* and *Unger* as pertinent to the attenuation analysis are not new. As *Bailey* recognized, in 1975, the United States Supreme Court decided *Brown*, 422 US 590, in which it set forth the factors (temporal proximity, intervening circumstances, and purpose and flagrancy) to be considered in a federal attenuation analysis. *Bailey*, 356 Or at 488-89; *see also Benning*, 273 Or App at 197-98 (a "totality of the circumstances test" has "long served as the legal foundation for determining whether the discovery of an outstanding warrant operates

---

[5] Under *State v. Hall*, 339 Or 7, 34-35, 115 P3d 908 (2005), a defendant was required to establish a minimal factual nexus between the evidence sought to be suppressed and the prior unlawful police conduct. If there were a minimal factual nexus, then the state had the burden to show that the evidence would have been obtained independently or that there was sufficient attenuation between the unlawful police conduct and the evidence. *Unger* disavowed "the 'minimal factual nexus' part of the *Hall* test." 356 Or at 74.

to attenuate the taint of the prior illegality under Article I, section 9"). The court recognized that, "[i]n light of *Brown*, it is * * * apparent that this court's decision in *Dempster* does not accurately reflect the current state of the law." *Bailey*, 356 Or at 504.

Indeed, the factors set forth in *Bailey* were discussed by both parties before the trial court at the suppression hearing. The state observed that, under federal law, the court should look at three issues in evaluating attenuation: "[First,] the length of time between the illegal seizure and the discovery of the evidence. The second part is the presence of an intervening circumstance, and the third part is the purpose o[r] the flagrancy of the official misconduct." The state then proceeded to explain to the trial court its view on how those factors weighed in this case. With respect to the length of time between the illegal seizure and the discovery of the evidence, the state stated that it was "not arguing that at all," acknowledging that here, the two occurred "right at the same time." According to the state, the "crux of [its] argument" was the intervening circumstance: The discovery of an arrest warrant "is absolutely an intervening circumstance. When you arrest somebody on a warrant, that is an intervening circumstance that then purges the taint of the unlawful stop." With respect to the purpose and flagrancy of the misconduct, the state noted that it did not "want to make too much argument here," but asserted that "the officer should get a little bit of credit in this area because the officer, even though [he, by the state's concession, did not have reasonable suspicion], he's not just going around and plucking people off the street. He did see something." Not surprisingly, in deciding that the evidence was subject to suppression under the Fourth Amendment, the court considered those factors, noting federal case law which set forth the factors for attenuation as "time, intervening circumstances, and purpose/flagrancy." (Internal quotation marks omitted.)

Finally, we observe that we have not remanded for a new hearing in other cases where we have applied the attenuation factors set forth in *Unger* and *Bailey*, notwithstanding the fact that *Unger* and *Bailey* had not yet been decided at the time that the parties made their arguments to the trial

court. *See Mitchell*, 273 Or App at 215-17 (applying *Brown* factors, as discussed in *Bailey*); *Benning*, 273 Or App at 194, 199-203 (observing that, in support of its argument that evidence need not be suppressed, "the state relied upon the *per se* rule of attenuation set forth in *Dempster*, 248 Or at 404"; applying the factors set forth in *Unger* to determine whether the state met its burden to establish attenuation). In view of all those considerations, we decline the state's invitation to remand this case for a new suppression hearing. Instead, we conclude that it is appropriate for us to evaluate whether, on the facts presented to the trial court, the state met its burden to demonstrate attenuation.

We turn, then, to that question.[6] As noted, when "the state has obtained evidence following a violation of a defendant's Article I, section 9 rights, it is presumed that the evidence was tainted by the violation and must be suppressed." *Jackson*, 268 Or App at 151. However, the state may rebut that presumption by proving attenuation—"that is, that the violation of [the] defendant's rights had such a tenuous factual link to the disputed evidence that the unlawful police conduct cannot be properly viewed as the source of that evidence." *Benning*, 273 Or App at 194. To determine whether the state proved attenuation under the totality of the circumstances, we consider "the temporal proximity between the unlawful police conduct and the discovery of the challenged evidence; the presence of mitigating circumstances; the presence of intervening circumstances; the purpose and flagrancy of the unlawful police conduct; and the nature, extent, and severity of the constitutional violation." *Id.* at 199. The underlying question those factors aim to address is "whether police exploited or took advantage of or traded on their unlawful conduct to obtain" the

---

[6] As noted, the trial court suppressed the evidence in question under the Fourth Amendment. On appeal, the state asserts that that ruling was incorrect, and defendant cross-assigns error to the trial court's ruling that the evidence was admissible under Article I, section 9. "Under Oregon court's 'first things first' doctrine, we have an obligation to address state constitutional claims before federal ones." *State v. Velykoretskykh*, 268 Or App 706, 707 n 2, 343 P3d 272 (2015); *see State v. Kennedy*, 295 Or 260, 266-68, 666 P2d 1316 (1983) (court considers and disposes of questions of state law before reaching federal law claims). Because a determination of the state constitutional issue might obviate the need to address the federal claim, we consider first whether the state met its burden to establish attenuation under Article I, section 9.

challenged evidence, or—stated another way—whether the challenged evidence "was tainted because it was derived from or was a product of the unlawful conduct." *Unger*, 356 Or at 80 (internal quotation marks omitted). As discussed above, in this case, the state presented no testimony at the suppression hearing. However, the trial court was presented with some undisputed facts, which it recounted in its order on the suppression motion. We examine those facts in considering whether the state met its burden to demonstrate that the factual link between the evidence and the unlawful seizure was so tenuous that the unlawful police conduct cannot be seen as the source of the evidence. As explained, we conclude that the state failed to meet that burden.

With respect to the temporal proximity between the unlawful police conduct and the discovery of the challenged evidence, the state did not present the trial court with specific facts regarding the amount of time that elapsed between the concededly unlawful seizure and the discovery of the methamphetamine. The state did, however, acknowledge that it could not demonstrate attenuation based on this factor, acknowledging that, in this case, the seizure and discovery of the evidence occurred "right at the same time." Accordingly, this factor weighs in favor of suppression. *See Benning*, 273 Or App at 199-200.

Similarly, the lack of mitigating circumstances weighs in favor of suppression. None of the facts presented to the trial court indicate the presence of mitigating circumstances. For example, nothing indicates that defendant was told that he was not required to remain with the officer while he ran the warrants check. *See id.* at 200 ("[D]efendant was not told that he was not required to remain while [the officer] ran a records check or that he was free to go to the bathroom, as he had requested."); *State v. Kuschnick*, 269 Or App 198, 211, 344 P3d 480 (2015) (no mitigating circumstances "separated defendant's consent from the unlawful police conduct: Defendant was not told that he could simply remain in the car or that he could refuse to consent to the search").

According to the state, the discovery of the outstanding arrest constituted an intervening circumstance.

"[T]he weight assigned to the discovery of the arrest warrant depends on the degree to which it was a direct consequence or objective of the unlawful detention[.]" *Bailey,* 356 Or at 505-06; *see Benning,* 273 Or App at 200-01 (applying that reasoning in context of Article I, section 9). Here, the evidence indicates that the discovery of the warrant was a direct consequence or objective of the unlawful detention. After observing defendant walking on the sidewalk and then "ducking" into the bushes, the officer seized defendant to determine his identity and immediately ran the warrants check. The "discovery of the arrest warrant was a general objective of the unlawful detention because * * * the nature of the unlawful detention was investigatory." *Benning,* 273 Or App at 201. Thus, as in *Benning,* this factor "weighs in favor of suppression." *Id.*

With respect to purpose and flagrancy, the focus "is on whether the stop was investigatory in nature and whether the unlawfulness of the police conduct should have been obvious to the officers." *Bailey,* 356 Or at 506. As explained earlier, on the issue of purpose and flagrancy, the state argued to the trial court that, although it was not making "too much argument" on this factor, the court should give the officer "a little bit of credit" because he was "not just going around and plucking people off the street." Instead, although he unlawfully seized defendant, he did it because he "s[aw] something."

In considering the purpose and flagrancy of the unlawful police conduct, we focus on the facts surrounding the conduct with defendant rather than the officer's "subjective intent or motivations." *Unger,* 356 Or at 90. Here, under the facts presented to and found by the trial court, it is clear that the officer's purpose in seizing defendant was investigatory, to develop, rather than act upon, reasonable suspicion of a crime. The officer noticed defendant go from the sidewalk into some bushes and, based on that observation, made contact with defendant. He asked defendant why he had engaged in that behavior, tried to get defendant's identification, and ran a warrants check on defendant. In other words, as noted above, the purpose of the stop was investigatory. As the state pointed out, the officer did not contact defendant randomly. Nonetheless, as the state conceded,

the officer seized defendant without probable cause or reasonable suspicion. As in *Benning*, in seizing defendant in order to identify him and run a warrants check, the officer took "a shot in the dark to see what might turn up." 273 Or App at 202 (internal quotation marks omitted); *see State v. Clemons*, 267 Or App 695, 702, 341 P3d 810 (2014) (purpose and flagrancy factor weighed in favor of suppression where officer unlawfully extended traffic stop without probable cause or reasonable suspicion and where the officer's only basis "was his perception that the driver and defendant were nervous and his previous experience with defendant possessing drugs during a traffic stop"); *see also Bailey*, 356 Or at 508 (officers' investigatory detention of the defendant after the lawful basis for traffic stop ended was flagrant and purposeful).

The final consideration is the nature, extent, and severity of the constitutional violation. In considering whether police conduct should be considered severe or limited, we consider whether the unlawful police conduct was "incidental to the subsequent discovery and execution of the warrant" or the "cause of it." *Benning*, 273 Or App at 205. We may also consider such things as whether the unlawful police conduct occurred because officers were "concerned for the defendant's safety [or] whether that conduct did not demonstrate any effort to control or direct [the] defendant." *Id.* at 204-05 (brackets in original; internal quotation marks omitted). Here, the facts presented by the state do not demonstrate that the police conduct was limited in nature. Instead, the officer unlawfully seized defendant, and the subsequent discovery and execution of the warrant flowed directly from that unlawful seizure. The officer seized defendant, discovered the warrant, arrested defendant on the warrant, and, thereafter, discovered the challenged evidence. Furthermore, the state did not present facts suggesting that the officer was concerned for defendant's safety, or that the officer did not attempt to control or direct defendant after unlawfully seizing him.

In sum, we conclude that the state did not meet its burden to demonstrate that, under the totality of the circumstances presented in this case, the unlawful seizure had such a tenuous factual link to the disputed evidence that

the unlawful police conduct cannot be properly viewed as the source of that evidence. Accordingly, the state failed to rebut the presumption that the evidence in question should be suppressed, and defendant is correct that the evidence was not admissible under Article I, section 9. Thus, the trial court did not err in granting defendant's motion to suppress.

Affirmed.