No. 225　　　　　March 19, 2025　　　　　1

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATHAN DALE WAGNER,
*Defendant-Appellant.*

Jackson County Circuit Court
20CR09499, 20CR12326;
A179920 (Control), A179921

Lorenzo A. Mejia, Judge.

Argued and submitted January 28, 2025.

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

In this consolidated appeal, defendant challenges his convictions in two cases for three counts of using a child in a sexually explicit display, ORS 163.670. Those convictions were entered after defendant pleaded no contest in both cases, reserving his right to appeal the trial court's denial of his two motions to suppress evidence. On appeal, defendant raises an assignment of error with respect to the trial court's denial of each motion to suppress evidence.

Defendant's motions concerned two categories of evidence: (1) evidence from an SD card that was seized from defendant's vehicle (the SD card evidence); and (2) evidence from the victim's mother's camera (the camera evidence). Regarding the SD card evidence, on appeal, the state concedes that the trial court erred when it did not suppress that evidence. We agree with and accept that concession. Regarding the camera evidence, we conclude that the trial court erred in denying defendant's motion to suppress, because police exploited their unlawful conduct with regard to the SD card evidence to obtain the camera evidence.

Consequently, we reverse defendant's convictions and remand to the trial court to give defendant the opportunity to withdraw his pleas.

## STANDARD OF REVIEW

"We review a trial court's denial of a motion to suppress for errors of law and are bound by the court's factual findings if there is constitutionally sufficient evidence to support them." *State v. DeJong*, 368 Or 640, 643, 497 P3d 710 (2021). "If the trial court did not make express findings as to all pertinent issues and there is evidence from which the court could have found a fact in more than one way, we will presume that the court found the fact that is consistent with its ultimate conclusion." *Id.*

## HISTORICAL FACTS AND PROCEDURAL HISTORY

Defendant temporarily kept his vehicle at someone else's property. Police developed reasonable suspicion that the owner of that property was engaged in criminal conduct and obtained warrants to search the owner, the property,

and any vehicles on the property for evidence of encouraging child sex abuse. In executing that warrant, police searched defendant's vehicle and found an SD card containing evidence depicting abuse by defendant of an unidentified child victim. Prior to discovery of the SD card evidence, police did not suspect defendant of such crimes. As a result of the discovery of the SD card evidence, the state indicted defendant in Case No. 20CR09499.

Police then posted a press release to Facebook. Although a copy of the press release was not provided to the trial court, and is not in the record, we understand the press release to have disclosed, at a minimum, defendant's full name, the nature of the SD card evidence, and the charges brought against defendant. We also understand the press release to have requested "more information" to assist police in identifying the unidentified child victim, though the particular wording of that request is not evident.

As a result of the press release, J contacted police.[1] J had known defendant personally and believed that her child, L, was the victim of the crimes described in the press release. To confirm this, police showed J the images that were on the SD card, and interviewed J and L. Police ultimately determined that L was the victim. Police also accompanied J to her house and confirmed that her residence was the scene of the creation of some of the images on the SD card. Police, at that point, believed that they had concluded "the part of their investigation" in Case No. 20CR09499 that involved J.

Some days later, J came to police with a camera that she had loaned to defendant and asked police to search the camera. Police found further evidence of abuse of L by defendant on the camera, and defendant was then indicted in Case No. 20CR12326.

Defendant moved to suppress both the SD card evidence and the camera evidence. The trial court granted

---

[1] We note that the trial court requested a copy of the press release from the parties. But a witness for the state, mistakenly, provided the trial court with a later press release—not the one to which J had responded—which resulted in a copy of the press release to which J had responded not being a part of the record in this case.

defendant's motion as to the SD card evidence but denied his motion as to the camera evidence. Police then obtained a second series of search warrants culminating in a second search of the SD card. Defendant again moved to suppress the SD card evidence, and the trial court denied that motion. Defendant then entered a conditional plea of no contest to three counts of using a child in a sexually explicit display. He now appeals the judgment convicting him of those counts.

## ANALYSIS

Regarding the SD card evidence, defendant contends, and the state concedes, that the trial court erred when it denied his motion to suppress that evidence. The parties agree that is so because the initial warrant to search vehicles—including defendant's vehicle—was not supported by probable cause. *See State v. Thibodeaux*, 173 Or App 353, 358, 22 P3d 248 (2001) (explaining that a warrant authorizing a search of a vehicle on a premises must be supported by an affidavit that establishes "some nexus between [the] *defendant's* vehicle and the objects sought" (emphasis in original)). Further, as the state puts it, the "second warrant authorizing a new forensic search of the SD card did not cure the illegalities in the first warrant." We agree with and accept the state's concession that the trial court erred in denying defendant's second motion to suppress the SD card evidence.

Regarding the camera evidence, defendant contends that the trial court erred when it denied his motion to suppress that evidence, because the "illegality [of the SD card search] requires suppression of all evidence that the state obtained as a result, including the identification of L and the discovery of [J]'s camera." The state responds that because J, a third party, voluntarily brought the camera to police and consented to a search of the camera for evidence, the camera evidence is attenuated from and untainted by the unlawful conduct that led to the SD card evidence.

"When the state has obtained evidence following the violation of a defendant's rights under Article I, section 9, we presume that the evidence was tainted by the violation

and must be suppressed." *State v. Benning*, 273 Or App 183, 194, 359 P3d 357 (2015) (internal quotation marks omitted). The state has the burden of rebutting that presumption: "The state may rebut that presumption by proving, as relevant here, that the police did not exploit the unlawful police conduct to obtain the challenged evidence—that is, that the unlawful police conduct was independent of, or only tenuously related to the disputed evidence." *State v. Riley*, 288 Or App 264, 271, 406 P3d 81 (2017), *rev den*, 362 Or 861 (2018) (internal quotation marks omitted). "The state must therefore prove that the violation of defendant's rights had such a tenuous factual link to the disputed evidence that the unlawful police conduct cannot be properly viewed as the source of that evidence." *Id.* (internal quotation marks omitted).

"To determine whether the state proved attenuation," we consider the "totality of the circumstances," including certain factors identified by the Supreme Court in *State v. Unger*, 356 Or 59, 88, 333 P3d 1009 (2014), *i.e.*, "the temporal proximity between the unlawful police conduct and the discovery of the challenged evidence; the presence of mitigating circumstances; the presence of intervening circumstances; the purpose and flagrancy of the unlawful police conduct; and the nature, extent, and severity of the constitutional violation." *State v. Jones (A154424)*, 275 Or App 771, 778, 365 P3d 679 (2015) (internal quotation marks omitted). Ultimately, however, "[t]he underlying question those factors aim to address is whether police exploited or took advantage of or traded on their unlawful conduct to obtain the challenged evidence, or—stated another way—whether the challenged evidence was tainted because it was derived from or was a product of the unlawful conduct." *Id.* at 778-79 (internal quotation marks omitted).

In this case, in considering those factors, we remember the importance of the "exploitation analysis," described above, in which we must engage: "Exploitation analysis recognizes that police conduct that constitutes an illegal stop or an illegal search may *** require suppression because the police took advantage of information gained from their illegal conduct or some other aspect of that conduct to obtain

*** an advantage that they would not have had the police stayed within the bounds of the law." *Unger*, 356 Or at 74 (so noting in the context of gaining the "advantage" of consent to search). Put another way, evidence obtained after an unlawful search must be suppressed, absent attenuation, because "the remedy for governmental intrusion upon the personal right guaranteed under Article I, section 9, is 'to restore the parties to the position they would have been in' prior to the governmental intrusion." *State v. Serrano (A173250)*, 324 Or App 453, 463, 527 P3d 54, *adh'd to as modified on recons*, 325 Or App 296, 528 P3d 1219 (2023), *rev den*, 372 Or 192 (2024) (quoting *State v. Mansor*, 363 Or 185, 221, 421 P3d 323 (2018)); *see also State v. Tyler*, 218 Or App 105, 109, 178 P3d 282 (2008) ("The rationale for suppressing unlawfully obtained evidence under Oregon law is remedial—that is, its purpose is to restore the defendant to the same position as if the government had stayed within the law.").

Thus, here, the question is whether, considering the totality of the circumstances, the challenged camera evidence was tainted because police "took advantage of information gained" from their unlawful conduct—that is, whether the camera evidence was "derived from" or was "a product of" the unlawful police conduct. We conclude that it was.

J's decision to bring her camera to police arose directly from the unlawful police conduct in seizing the SD card. The trial court determined—and the state acknowledges—that J "probably would never have thought about the camera or taken it to police had she not been aware of the images found on the SD card." That is, the police conduct in seizing the SD card was not merely incidental to the discovery of the camera evidence; it was the direct cause of that discovery, via the Facebook press release. Thus, the "intervening circumstances" factor weighs in favor of suppression in this case. *See Benning*, 273 Or App at 200-01 (explaining that "the strength of the causal connection between an unlawful seizure and the challenged evidence" bears on "the significance of the discovery of the [challenged evidence] as an intervening circumstance"). Moreover, it is relevant that the nature of the intrusion into defendant's privacy was

severe: Police conducted an unauthorized search of defendant's private digital data, which, as the Supreme Court has recognized, "carries with it an enhanced risk of extensive governmental intrusion into personal privacy interests that are equal to, or even surpass, the privacy interest in one's home." *State v. Turay*, 371 Or 128, 146, 532 P3d 57 (2023).

At bottom, however, in conjunction with the facts noted above, it is dispositive that there is no dispute that police "took advantage of information gained" from their unlawful conduct—*i.e.*, their search and seizure of the SD card—to obtain the challenged camera evidence: The SD card evidence caused police to issue a press release that identified defendant, described the nature of the evidence that they unlawfully obtained from the search of the SD card, and sought additional information from the public. And when J responded to that press release—as police hoped someone would—police showed her the unlawfully obtained SD card evidence. The camera evidence must be suppressed to "restore the defendant to the same position as if the government had stayed within the law," *Tyler*, 218 Or App at 109, and had not conducted the unlawful search and seizure of the SD card.

In seeking a different result, the state argues that certain factors identified by the Supreme Court in *Unger*—"temporal proximity," "mitigating circumstances," and the "purpose and flagrancy of the unlawful police conduct"—are not relevant in this case, because those factors are focused on the effects of unlawful police conduct on a defendant's consent, not on a third party's consent. *See Unger*, 356 Or at 80-81 (discussing those factors in the context of the defendant's consent to search his home). The state's proposal regarding how to evaluate the *Unger* factors in a case such as this one carries some persuasive force. And the state, to be sure, has a legitimate interest in investigating crimes of the sort that defendant has been accused of committing.

But, as noted, the purpose of the *Unger* factors is ultimately to identify whether "police exploited or took advantage of or traded on their unlawful conduct to obtain the challenged evidence." *Jones*, 275 Or App at 778-79 (internal quotation marks omitted). Given the totality

of circumstances here—including police issuing a press release which they would not have issued in the absence of the unlawfully obtained evidence, and which described the nature of the unlawfully obtained evidence—we conclude that the trial court erred in determining that the state met its burden to establish that the camera evidence was sufficiently attenuated from the SD card evidence.[2]

Reversed and remanded.

---

[2] Given the facts of this particular case, we note that the other factors identified in *Unger*—including "the purpose and flagrancy of the unlawful police conduct"—do not suggest a different result.